**Elijah G. BARNETT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 66, 1996.

Supreme Court of Delaware.

Submitted: Feb. 18, 1997.

Decided: March 20, 1997.

Jeffrey K. Martin, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Attorney General, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Elijah Barnett ("Barnett"), was convicted of Trafficking In Cocaine, Possession with Intent To Deliver Cocaine, Use of a Vehicle For Keeping Controlled Substances, Reckless Endangering in the Second Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Deadly Weapon by a Person Prohibited, Possession of Drug Paraphernalia, and Resisting Arrest. Barnett was found not guilty of Reckless Endangering in the First Degree and Use of a Dwelling For Keeping Controlled Substances. This is Barnett's direct appeal.

Barnett has raised two primary issues before this Court. First, he contends that the drug convictions and the weapons' convictions should be reversed. According to Barnett, the Superior Court abused its discretion by refusing to hear the merits of a motion to suppress the physical evidence of those crimes. Second, Barnett contends that the evidence presented by the State at trial was insufficient to sustain his convictions for the weapons' offenses. Specifically, Barnett contends that the State has not established that he had possession of a firearm, as the term "possession" is used in the relevant statutes.

This Court has concluded that Barnett's first contention is without merit. The Superior Court properly exercised its discretion in declining to hear the merits of an untimely motion to suppress that was filed by Barnett's trial attorney. Barnett's second contention, however, is meritorious. The record reflects that there was insufficient evidence to sustain Barnett's convictions of the weapons' offenses. Accordingly, the judgments of the Superior Court are affirmed in part and reversed in part.[1]

### Facts

On May 2, 1995, the City of Newark Police Department received a telephone call from a confidential informant indicating that Barnett had traveled to New York by train to pick up cocaine. The informant provided Barnett's address. The informant also described the car that Barnett had driven to the train station.

The police officers contacted Barnett's stepmother ("Mrs. Barnett") at her place of employment. Mrs. Barnett told the police that the car described by the informant belonged to her, although it was registered in her incarcerated husband's name. Mrs. Barnett consented to the police searching her car. She also consented to the police searching her apartment, which was located at the address the informant had provided. She lived there with Barnett and her two minor sons.

After unsuccessfully looking for the car at the train station, the police proceeded to Mrs. Barnett's apartment. The police found the car, unoccupied, in the parking lot to the apartment complex. While the police were

---

1. The third issue raised by Barnett is a contention that the Superior Court abused its discretion when it admitted certain "burglary tools" into evidence. Those items were introduced by the State in an effort to connect Barnett to the firearm in the locked box that was located in a hall linen closet. Since the judgments of conviction for the weapons' offenses are being reversed, that contention is moot.

waiting for other officers to arrive, they saw Barnett leaving the apartment carrying a backpack.

Barnett got into the car that had been described by the informant. The police approached the car and identified themselves. Barnett backed out of the parking space and began to move forward. The police ordered Barnett to stop the car. One officer opened the driver's side door and told Barnett to put the gear lever in park. Instead of stopping, Barnett accelerated, striking the other officer with the open car door.

Barnett lost control of the automobile almost immediately and crashed into a sign at the parking lot exit. Barnett fled on foot, leaving his backpack in the car. The police then searched the motor vehicle. Inside of the backpack, they found a plastic bag containing crack cocaine, several vials containing powder cocaine, and assorted drug paraphernalia.

The police officers then went to search Mrs. Barnett's apartment. She was at home by now and renewed her prior consent for them to search. She directed the police to a bedroom that Barnett shared with her two minor sons. In the closet of Barnett's bedroom, the police found a bag that contained an empty box for a firearm and gun cleaning equipment. They also found a locked safe in the bedroom closet.

As the police continued to search, they found a locked box in the hall linen closet. The police did not find a key to the locked box. Mrs. Barnett told the officers that the locked box did not belong to her. She also asked the police to remove it from her home.

The officers took the locked box and the safe to the police station. Both containers were opened by force. Inside of the safe, the police found an electronic scale and drug paraphernalia. The locked box that had been taken from the hallway linen closet contained a pistol, ammunition, and a bag of quarters.

*Suppression Motion Untimely*
*Drug and Weapons' Convictions*

Barnett's initial challenge is directed at all of his convictions for drug-related and weapons' offenses. According to Barnett, the Superior Court improperly refused to hear the merits of his trial attorney's motion to suppress the introduction into evidence of certain physical items that were seized by the police. The Superior Court denied the motion to suppress because it was not filed on time.

The record reflects that Barnett was indicted in July 1995. A public defender was appointed to represent him. A privately retained attorney was substituted as Barnett's trial counsel on September 15, 1995.

Barnett's new trial counsel filed a motion to suppress on the morning of trial, November 13, 1995. The record reflects, however, that the pre-trial order stated that all motions were to be filed by September 20, 1995. In the absence of any exceptional circumstances, the motion to suppress had to be filed by that date.

■ The Superior Court concluded that the change in representation did not excuse Barnett's new trial counsel from reviewing the record and filing a timely motion to suppress. The trial judge did not find any exceptional circumstances present. Accordingly, the trial judge declined to hear the merits of the untimely motion to suppress. The record reflects that action was a proper exercise of the broad discretion vested in the Superior Court to enforce its rules of procedure and pre-trial orders. *See* Super.Ct.Crim.R. 12(b)(3), 17.1; *see also Gebhart v. Ernest DiSabatino & Sons, Inc.,* Del. Supr., 264 A.2d 157 (1970).

■ Barnett acknowledges that he cannot raise the ineffectiveness of his trial counsel as an issue in this direct appeal. *Duross v. State,* Del.Supr., 494 A.2d 1265 (1985). Instead, he has requested this Court to invoke the plain error "interest of justice" exception provided for in Supreme Court Rule 8.[2] We decline to do so. The appropriate remedy is

2. Supreme Court Rule 8 provides: "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."

a motion for postconviction relief pursuant to Rule 61 of the Superior Court's Rules of Criminal Procedure. *Cf. Dixon v. State*, Del. Supr., 581 A.2d 1115 (1990); *Braxton v. State*, Del.Supr., 479 A.2d 831 (1984). Accordingly, the judgments that were entered following Barnett's drug convictions are affirmed.

### *Firearm*
### *Possession During the Course of a Felony Physically Available or Accessible*

Barnett was convicted of Possession of a Firearm During the Commission of a Felony. 11 *Del.C.* § 1447A ("Section 1447A"). Barnett contends that the evidence presented at trial was insufficient to sustain his conviction of that offense. The seminal decision by this Court with regard to conviction for Possession of a Firearm During the Commission of a Felony is *Mack v. State*, Del.Supr., 312 A.2d 319 (1973).

In *Mack*, this Court was required to construe the prior statutory offense of Possession of a Deadly Firearm During the Commission of a Felony.[3] This Court construed the word "possession" in that statute as encompassing the elements of availability and accessibility. *Mack v. State*, 312 A.2d at 322. In *Mack*, the defendant was convicted of Possession of a Narcotic Drug with Intent to Sell and Possession of a Deadly Firearm During the Commission of a Felony. *Id.* at 320. In that case, the police found drugs and drug paraphernalia in a clothes dresser in the defendant's bedroom. *Id.* The police also found a revolver close at hand to the drugs in a chest of drawers in the defendant's bedroom, which was found to be the *locus* of his continuing felonious drug activities. *Id.* at 322. This Court held that the State's evidence established a contemporaneous nexus between the drug felony and the firearm and also satisfied the available and accessible definition of possession as used in the statute.

Following *Mack*, in a trilogy of cases with varying factual patterns, this Court has consistently held that to secure a conviction pursuant to Section 1447, the State is "required to establish that at the time [the defendant] was engaged in the designated predicate felony [he] had a deadly weapon 'physically available or accessible to him.'" *Gardner v. State*, Del.Supr., 567 A.2d 404, 413 (1989) (quoting *Mack v. State*, Del.Supr., 312 A.2d 319, 322 (1973)); *see Kornbluth v. State*, Del.Supr., 580 A.2d 556 (1990); *Lewis v. State*, Del.Supr., No. 273, 1989, Holland, J., (Mar. 19, 1990) (ORDER). In *Kornbluth* and *Lewis*, this Court concluded that the weapons were accessible to the defendants during the commission of the predicate felonious drug activities. *See Kornbluth v. State*, Del.Supr., 580 A.2d 556 (1990); *Lewis v. State*, Del.Supr., No. 273, 1989, Holland, J., (Mar. 19, 1990) (ORDER). Conversely, in *Gardner*, this Court held that "the required evidentiary nexus of physical accessibility between the weapon and [the defendant's] engaging in the underlying felony of drug trafficking [was] insufficient as a matter of law." *Gardner v. State*, 567 A.2d at 414.

In *Gardner*, the defendant was arrested outside of his residence. *Id.* at 408. A subsequent search of the residence uncovered a bag of cocaine on a first floor stair railing. *Id.* A revolver was also found in the top drawer of a night stand in the upstairs master bedroom. *Id.* The evidence presented by the State in *Gardner* did not support a factual finding that the locus of the felony was the defendant's entire house. There was also no evidence that the drugs seized in *Gardner* were ever in the upstairs master bedroom or that the upstairs master

---

**3.** In *Mack*, the defendant was convicted of Possession of a Deadly Firearm During the Commission of a Felony pursuant to 11 *Del.C.* § 468A ("Section 468A"). *Mack v. State*, 312 A.2d at 320. In that case, this Court noted that Section 468A had been superseded by 11 *Del.C.* § 1447 ("Section 1447"), which involves Possession of a Deadly Weapon During the Commission of a Felony. *Mack v. State*, 312 A.2d at 320 n. 1. We acknowledged that because of the similarity of the two statutes, the rulings in *Mack* under Section 468A have application under Section 1447. *Id.*

In 1994, Section 1447A became effective. Because of the similarity of Section 1447 and Section 1447A, the rulings under Section 1447 have application under Section 1447A. Accordingly, we adhere to our holding in *Mack*, and its progeny, when construing the word "possession" in Section 1447A.

bedroom was ever the locus of the defendant's drug trafficking activities. *Id.* at 413.

In *Lewis,* the police found evidence of drug trafficking in the bedroom and kitchen of the defendant's mobile home. *Lewis v. State,* No. 273, 1989, Holland, J., (Mar. 19, 1990) (ORDER). A *loaded* assault rifle was found in an *unlocked* cabinet in the living room. *Id.* Lewis was convicted of Possession with Intent to Deliver · Cocaine, Maintaining a Dwelling for Keeping Controlled Substances, and Possession of a Deadly Weapon During the Commission of a Felony. *Id.* In *Lewis,* the State's evidence supported a factual finding that the locus of the continuing felony could be attributed to the entire mobile home. *Id.* This Court concluded that the facts in *Lewis* were more analogous to *Mack* than to *Gardner* and affirmed the weapon's conviction. *Id.*

In *Kornbluth,* after two controlled purchases of marijuana from the defendant at his residence, the police executed a search warrant at that same house. *Kornbluth v. State,* 580 A.2d at 557. The police found twenty-five bags of marijuana, seventeen of which were located in a cooler located next to the living room sofa. *Id.* at 558. The police also found a loaded shotgun behind that sofa. *Id.* Thus, the State's evidence established that the locus of the continuing felony was the living room, where both the drugs and the weapons were found within arm's reach of each other. *Id.* at 561. In *Kornbluth,* this Court held that the accessibility and availability definition of possession as used in Section 1447 was satisfied, where weapons were found in close proximity in the same room as the drugs, even though the defendant was *absent* at the time of the seizure. *Id.* at 561; *accord Wilson v. State,* Del.Supr., 343 A.2d 613, 618 (1975).

### Insufficient Evidence
### Firearm Possession During Felony

■ Barnett argues that the record evidence in this case does not support his con-

viction for Possession of a Firearm During the Commission of a Felony.[4] The applicable standard of appellate review is whether, considering the evidence in the light most favorable to the prosecution, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Morrisey v. State,* Del. Supr., 620 A.2d 207, 213 (1993); *Dixon v. State,* Del.Supr., 567 A.2d 854, 857 (1989). Accordingly, this Court must examine the evidence presented to establish that the firearm was accessible to Barnett *at the time* that the underlying felony was committed.

■ The factual record in the case *sub judice* reflects that it is more analogous to *Gardner* than to *Lewis* or *Kornbluth.* Barnett was confronted by the police outside of his apartment building. The drugs were found in the backpack that Barnett had left in the car when he fled from the police. The firearm was discovered in Mrs. Barnett's apartment inside of a locked box in the hallway linen closet. No key to the locked box was ever recovered. No drugs were found anywhere in Mrs. Barnett's apartment. In fact, the jury acquitted Barnett of using his stepmother's apartment for keeping controlled substances.

"The clear legislative policy supporting the enactment of section 1447 is 'to discourage the *accessibility* of a deadly weapon during the commission of a crime, thus reducing the probability of serious harm to the victim.'" *Gardner v. State,* Del.Supr., 567 A.2d 404, 413 (1989) (quoting *Mack v. State,* Del.Supr., 312 A.2d 319, 322 (1973)). The record evidence does not support a finding that the firearm inside of a locked box in a hallway linen closet was available and accessible to Barnett *during* the commission of any felonious drug activity. *See id.* Consequently, this Court holds that, as a matter of law, the evidence was insufficient to establish the physical *accessibility and availability* of the firearm *during* the commission of any predicate drug felony. *See* 11 *Del.C.* § 1447A;

---

4. Barnett's trial attorney made a timely motion for a judgment of acquittal on both weapons' charges. Super.Ct.Crim.R. 29. The Superior Court expressed reservations about the sufficiency of the State's evidence on the weapons' of-

fenses. The Superior Court ultimately decided, however, to deny the motions for each judgment of acquittal and let this Court review the sufficiency of the State's evidence on the weapons' charges in the event Barnett was convicted.

*Gardner v. State,* Del.Supr., 567 A.2d 404 (1989).

### Insufficient Evidence
### Possession by a Person Prohibited

Barnett's other weapon's conviction was pursuant to 11 *Del.C.* § 1448 ("Section 1448"). That statute prohibits possession of a deadly weapon by certain prohibited persons. Barnett stipulated that he had previously been adjudicated as delinquent for conduct which, if committed by an adult, would have constituted a felony. Therefore, he was within the category of persons prohibited by Section 1448 from possessing a deadly weapon. 11 *Del.C.* § 1448(a)(4).

Barnett contends, however, that the evidence presented at trial was insufficient to sustain his conviction of that offense because the State failed to establish that he possessed the weapon. "Possession" of a weapon by a defendant sufficient to sustain a conviction under Section 1448 was construed by this Court in *Sexton v. State,* Del.Supr., 397 A.2d 540 (1979). In *Sexton,* this Court held that a jury must find that a weapon was "physically available and accessible to the defendant." *Id.* at 547.

The record reflects that the State relied upon the same evidence to establish Barnett's "possession" of the gun that was seized from the locked box in the hallway linen closet, for the purpose of convicting him under both Section 1447A and Section 1448. In its closing argument, with regard to the charge of Possession of a Deadly Weapon by a Person Prohibited, the State advised the jury that the "possession element is addressed when I speak of Possession of a Firearm During the Commission of a Felony." Accordingly, the State's position at trial was that it would establish that Barnett possessed the weapon during the commission of a felony and that same possession would also constitute the separate crime of possession by a prohibited person because of Barnett's prior record.

 The term possession, as it is used in both Section 1447A and Section 1448, means physically available and accessible to the defendant. *Sexton v. State,* Del.Supr., 397 A.2d

540 (1979); *Mack v. State,* Del.Supr., 312 A.2d 319 (1973). This Court has already determined that the evidence presented at trial was insufficient, as a matter of law, to establish that the firearm was possessed by Barnett during the commission of a felony. Consequently, the State's reliance upon that same evidence was also insufficient to support Barnett's conviction for Possession of a Deadly Weapon by a Person Prohibited. *See* 11 *Del.C.* § 1448; *Sexton v. State,* Del.Supr., 397 A.2d 540 (1979).

### Conclusion

The Superior Court properly exercised its discretion in denying Barnett's untimely motion to suppress certain items of evidence. Accordingly, the judgments of conviction for the drug offenses are affirmed. There was insufficient evidence, however, to convict Barnett of the weapons' offenses. Therefore, the judgments that were entered for each of Barnett's weapons' convictions are reversed.