# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          )
                            )
v.                          )     No. 1912024006
                            )
LARRY KING, JR.,            )
                            )
          Defendant.        )

**Submitted: November 13, 2020**
**Decided: February 26, 2021**

**Upon Defendant's Motion to Dismiss Indictment- Denied**

In January 2020, the State indicted the defendant, Larry King, Jr., for rape, unlawful sexual contact, continuous sexual abuse of a child, and assault. The charges stem from a sexual assault originally reported in 2009. At the time of the initial report, the victim went to a hospital where a forensic nurse examiner collected evidence as part of a Sexual Assault Nurse Examination. The State collected hair and blood samples from the defendant but declined to prosecute him at that time. In 2017, the SANE evidence collected in 2009 was sent for further forensic analysis. In 2019, testing confirmed Defendant's DNA matched the DNA sample collected from the victim's rectal swab. All told, approximately ten years and four months passed between the alleged sexual abuse and Defendant's arrest. During that time, the black hair as well as two pairs of underwear collected from the victim were misplaced and permanently lost. Defendant now moves to dismiss the indictment

1

on the grounds that this delay violated his right to a speedy trial and his due process right to a fair trial. Because Defendant's speedy trial right did not attach before his arrest and because Defendant has not demonstrated actual prejudice from the delay, Defendant's Motion to Dismiss the Indictment is denied.

## FACTUAL & PROCEDURAL BACKGROUND

1. On July 26, 2009, the New Castle City Police Department received a complaint from six-year-old B.S.[1] that her mother's boyfriend, Larry King, Jr. ("Defendant), had touched her vaginal area.[2] The victim's mother took her to A.I. duPont Hospital where she underwent a Sexual Assault Nurse Examination ("SANE").[3] A Forensic Nurse Examiner ("FNE") collected swab samples from the victim's vagina and rectum. The FNE also found a foreign black hair in the victim's vaginal area.[4] The victim was interviewed by a trained forensic interviewer at the Children's Advocacy Center but refused to discuss the alleged abuse.[5] On August 4, 2009, Detective Dempsey obtained samples of Defendant's hair and blood pursuant to a search warrant.[6] The Department of Justice declined to initiate a prosecution against Defendant, and no further evidence was developed.[7]

---

[1] The victim's full name has been omitted for privacy.
[2] Def.'s Mot. at 1.
[3] Id.
[4] Id.; State's Resp. at 1.
[5] State's Resp. at 1.
[6] Def.'s Mot. at 2.
[7] Id.

2.    In October 2017, investigators sent the victim's 2009 SANE kit for further forensic analysis.[8]  The swab of the victim's rectum produced a profile associated with male DNA.[9]  New Castle City Police Captain Tina Shughart then submitted Defendant's blood sample to the Division of Forensic Science ("DFS").[10]  On December 4, 2019, DFS confirmed Defendant's DNA was a match to the DNA sample swabbed from the victim's rectum.[11]  The DNA findings prompted a second interview with the victim on December 7, 2019.[12]  The victim disclosed the July 26, 2009 sexual assault along with other instances between 2007 and 2009 during which Defendant sexually assaulted her.[13]  The victim stated she did not disclose these incidents in her 2009 interview because her mother told her not to say anything and the interviewer did not ask about anything other than the July 26, 2009 assault.[14]

3.    Police arrested Defendant on December 12, 2019.[15]  On January 21, 2020, a New Castle County grand jury indicted Defendant for two counts of Rape First Degree, one count of Attempted Rape First Degree, one count of Rape Second Degree, two counts of Unlawful Sexual Contact First Degree, one count of

---

[8] *Id.*
[9] *Id.*
[10] State's Resp. at 1.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 2.
[15] Def.'s Mot. at 2.

Continuous Sexual Abuse of a Child, and one count of Assault Third Degree.[16] On October 1, 2020, Defendant filed this Motion to Dismiss the Indictment ("Motion"). The State filed its Response on November 13, 2020.

**PARTIES' CONTENTIONS**

4. Defendant argues the State's ten-year delay between the last allegedly criminal act and Defendant's arrest was unreasonable and requires dismissal of all charges in the indictment.[17] Defendant argues the speedy trial rights guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution should apply to unreasonable pre-arrest delay that causes actual prejudice to a defendant's ability to defend against the alleged crimes. Defendant asserts the public policy concerns implicated by the right to a speedy trial are critical in this case because there is no statute of limitations to protect him from the State's unreasonable delay in bringing charges against him.[18] Defendant separately argues the delay violated his due process right to a fair trial.[19] Defendant alleges the State's pre-arrest delay caused him actual prejudice because potentially exculpatory evidence—specifically the black hair collected from the victim's

---

[16] State's Resp. at 2. In his Motion, Defendant argues Count V of the indictment (Assault Third Degree) must be dismissed because the charge was brought outside the three-year statute of limitations. Def.'s Mot. at 11. The State conceded in its Response that the charge is precluded by the statute of limitations and has agreed to enter a *nolle prosequi* on Count V. State's Resp. at 16. Accordingly, the Court need not further consider this argument.

[17] Def.'s Mot. at 6.

[18] *Id.* at 4.

[19] *Id.* at 9-10.

4

vaginal area and two pairs of the victim's underwear—were lost during the ten-year period between the alleged abuse and his arrest.

5.     The State contends Defendant's speedy trial right under the Sixth Amendment did not attach until after he was arrested in 2019.[20] The State argues Defendant is attempting to use the Sixth Amendment to conjure a statute of limitations where the General Assembly has chosen not to impose one.[21] Even if Defendant did enjoy a speedy trial right before his arrest, the State asserts Defendant cannot demonstrate this right was violated under the *Barker v. Wingo* factors.[22] The State also maintains Defendant's due process right to a fair trial was not violated because the delay in bringing the indictment did not have a measurable prejudicial effect on Defendant.[23] The State argues Defendant only alleges a mere possibility of prejudice based on the evidence lost during the intervening ten years.[24] According to the State, the lost evidence likely would have been inculpatory, and it is more likely the State was prejudiced by the delay.[25] Finally, the State asserts that, although Defendant cannot examine the evidence lost during the ten-year delay, he can request a jury instruction entitling him to the presumption that the evidence

---

[20] State's Resp. at 3.
[21] *Id.* at 5.
[22] *Id.* at 6.
[23] *Id.* at 14-15.
[24] *Id.* at 9.
[25] *Id.* at 15.

5

would have been exculpatory.[26]  Accordingly, the State maintains dismissal is unwarranted.

## ANALYSIS

### A. The State's delay did not violate Defendant's right to a speedy trial under the Sixth Amendment.

6.      The State's ten-year delay in bringing charges against Defendant did not violate the Sixth Amendment because Defendant's speedy trial right did not attach until he was arrested in December 2019.  The Sixth Amendment to the United States Constitution provides that, "[i]in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."[27]  In *United States v. Marion*,[28] the appellants challenged their indictment for conducting fraudulent business, which was brought roughly three years after the alleged criminal scheme concluded.[29]  The appellants claimed their right to a speedy trial was violated by the delay, and that the delay was so substantial and inherently prejudicial that the Sixth Amendment required the indictment's dismissal.[30]  The Supreme Court examined the circumstances surrounding the Sixth Amendment's adoption and concluded the framers did not intend to protect against pre-accusation delay.[31]  The Court found no

---

[26] *Id.*
[27] U.S. Const., Amend. VI.
[28] 404 U.S. 307 (1971).
[29] *U.S. v. Marion*, 404 U.S. 307, 308-09 (1971).
[30] *Id.* at 313.
[31] *Id.* at 314-15 (1971).

6

support for the proposition that, at the time of the Sixth Amendment's adoption, a prosecution would not be permitted if there had been some lengthy delay in presenting a charge.[32] Rather, the Court noted that rules and statutes implementing the Sixth Amendment consistently limited the Sixth Amendment's speedy trial right to post-arrest delays.[33] Accordingly, the Court held that the speedy trial does not attach until arrest, when a defendant is first formally accused of committing a crime. Defendant does not allege he suffered any prejudicial delay after his arrest; he only challenges the delay between the abuse alleged in 2009 and his arrest in 2019. Under *Marion*, Defendant's speedy trial right did not attach until he was arrested in December 2019. No matter how lengthy or unreasonable Defendant argues the delay was, the State's delay in bringing charges against Defendant could not violate the Sixth Amendment.

7.      Defendant attempts to distinguish this case from *Marion* based on the fact that Delaware eliminated statutes of limitation for the sexual offenses of which he is accused. Defendant asserts that *Marion*'s holding assumed statutes of limitation would protect defendants from unreasonable delay before arrest or indictment. Because Delaware imposes no statutes of limitations for the charges in this case, Defendant argues public policy requires extending the speedy trial right to

---

[32] *Id.* at 313-14 (1971).
[33] *Id.* at 316-19 (1971).

7

pre-arrest delay. But this Court has no power to make such a ruling. In *Marion*, the United States Supreme Court unambiguously held the Sixth Amendment does not provide any speedy trial right before a defendant's arrest. This Court is bound by that holding, regardless of any supposed public policy implications. Moreover, *Marion*'s reasoning did not rely exclusively or even primarily on the availability of statutes of limitation. Rather, the Court based its analysis on the Amendment's text, its history, and the legislative efforts to implement it.[34] The Court's point regarding the existence of statutes of limitation to ameliorate pre-arrest delay was not necessary to its holding regarding the Sixth Amendment's scope.

8.      Finally, Defendant argues the ten-year delay was due to inexcusable neglect on the part of law enforcement and resulted in the loss of potentially relevant and exculpatory evidence. Defendant asserts this supposedly inexcusable delay requires that the Sixth Amendment be "pressed into service." Again, Defendant misapprehends the scope of the speedy trial right. The prejudice a criminal defendant may suffer from the government's delay in bringing criminal charges does not alter the basic principle that the right to a speedy trial does not attach until arrest.[35] Although Defendant's prejudice and the State's culpability would be considerations under *Barker v. Wingo*,[36] the *Barker* factors assess whether a

---

[34] *Id.* at 313-320.
[35] *Id.* at 321-22.
[36] 407 U.S. 514 (1972).

defendant's speedy trial right has been violated not whether the defendant has a speedy trial right to begin with.[37] The *Marion* court made it clear that a defendant enjoys no right to a speedy trial before arrest, regardless of the prejudice a pre-arrest delay may cause. The challenged ten-year delay occurred before Defendant's arrest. Accordingly, the State did not violate Defendant's right to a speedy trial under the Sixth Amendment, and dismissal is not warranted.

**B. The State's delay in bringing charges against Defendant did not violate his right to a speedy trial under the Delaware Constitution**

9. Article I, Section 7 of the Delaware Constitution provides, "[i]n all criminal prosecutions, the accused hath a right to . . . a speedy and public trial by an impartial jury."[38] The right to a speedy trial under the Delaware Constitution mirrors the corresponding right under the Sixth Amendment to the United States Constitution.[39] The Court's analysis of Defendant's speedy trial right under the Delaware Constitutiton therefore parallels its Sixth Amendment analysis.[40] As discussed above, Defendant's indictment in January 2020 did not violate his

---

[37] The four *Barker* factors are: (i) the length of the delay; (ii) the reason for the delay; (iii) defendant's assertion of the right; and (iv) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The State argues that, even if Defendant has a speedy trial right, that right was not violated under the *Barker* factors. Because Defendant did not have a speedy trial right pre-arrest, however, the Court need not apply *Barker* to the facts of this case. *State v. Hill*, 2016 WL 2869968, at *2 (Del. Super. May 16, 2016) ("[A]nalysis of the *Barker v. Wingo* factors is not appropriate before the length of delay reaches the level of presumptive prejudice. Courts generally set that point at a year, *post-arrest or indictment*, whichever was earlier") (emphasis added).

[38] Del. Const. Art. I, § 7.

[39] *Skinner v. State*, 575 A.2d 1108, 1115 (Del. 1990).

[40] *Id.* (citing *Bailey v. State*, 521 A.2d 1069, 1079 (Del. Super. 1987)).

9

constitutional speedy trial right because that right did not attach until his arrest. Accordingly, Defendant's parallel right to a speedy trial under the Delaware Constitution was not violated.

### C. The State's delay did not violate Defendant's right to a fair trial under the Fourteenth Amendment.

10. In addition to his speedy trial argument, Defendant also argues the pre-arrest delay violated his due process right to a fair trial. "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment."[41] To prevail on the contention that a pre-arrest delay denied him a fair trial, Defendant must prove actual and substantial prejudice from the delay or that the government intentionally delayed to gain some tactical advantage.[42] Defendant does not allege the State intentionally delayed prosecution in order to gain a tactical advantage. Rather, Defendant argues he suffered prejudice because a black hair and two pairs of underwear collected from the victim were lost in the ten-year interval between the SANE examination and Defendant's arrest. Defendant speculates this evidence could have been exculpatory and highly relevant to his defense.

11. The mere possibility that memories will fade, witnesses will become unavailable, and evidence will be misplaced is not itself sufficient to demonstrate

---

[41] *Drope v. Missouri*, 420 U.S. 162, 172 (1975). Defendant also argues this right to a fair trial arises under the Law of the Land Clause of the Delaware Constitution, but does not argue those rights are distinct or that they require a separate analysis.
[42] *Preston v. State*, 338 A.2d 562, 567 (Del. 1975).

10

prejudice.[43] Defendant's only claim of prejudice is based on his speculation that the evidence that was lost could have been exculpatory.[44] At this time, Defendant has not demonstrated actual and substantial prejudice to his right to a fair trial. Accordingly, the Court need not impose the severe remedy of dismissing the indictment. If necessary and appropriate, any prejudice attendant to the missing evidence likely can be remedied with an adverse inference jury instruction at trial.[45] If Defendant can demonstrate when the case proceeds to trial that he suffered actual and substantial prejudice that cannot be remedied short of dismissal of the charges, he then may renew his argument that his right to a fair trial was violated. Defendant effectively concedes that the due process argument and attendant analysis of actual prejudice suffered is premature at this stage of the proceedings.[46]

---

[43] *Id.* at 566 (Del. 1975) (quoting *U.S. v. Marion*, 404 U.S. 307, 326 (1971)).

[44] *Crippen v. State*, 1997 WL 398919, at *2 (Del. June 20, 1997).

[45] *See Lunnon v. State*, 710 A.2d 197, 199 (Del. 1998).

[46] Def.'s Mot. at 11. Under *Preston v. State*, the Court considers a variety of factors to determine whether a defendant has met his burden of demonstrating actual and substantial prejudice caused by pre-arrest delay. 338 A.2d at 567. Defendant's motion does not address those factors (or even cite *Preston*). If Defendant renews his motion to dismiss on the basis that his due process rights were violated, he should be prepared to present evidence at a hearing regarding those factors.

11

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Indictment is **GRANTED** as to Count V by reason of the statute of limitations and otherwise is **DENIED. IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge